J-A31023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.I., N/K/A S.F. | |
| Appellant | No. 273 MDA 2015 |

Appeal from the Order Entered January 15, 2015
In the Court of Common Pleas of York County
Civil Division at No(s): 2009 FC 001342-03

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                   **FILED DECEMBER 11, 2015**

S.I., N/K/A S.F. ("Mother") appeals from the January 15, 2015 order, entered in the Court of Common Pleas of York County, awarding S.W. ("Father") primary physical custody of the parties' daughter, S.W., subject to Mother's partial custody rights, and awarding the parties shared legal custody.[1]  After our review, we affirm.

Pursuant to the trial court's order of August 26, 2013, Mother relocated with S.W. to Oklahoma.  Thereafter, Father learned that Mother was no longer residing with her husband in Oklahoma and had moved with S.W. to Texas, without Father's knowledge or consent.  On July 28, 2014,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S.A. § 5302.

Father filed a motion for modification of custody. Father alleged Mother's home life had become unstable, that he could provide more stability and continuity in S.W.'s daily life and education, and that he was better able to promote the relationship between S.W. and Mother, as well as between S.W. and Mother's family, all of whom reside in Pennsylvania.

Following a conciliation conference and trial, the Honorable Joseph C. Adams determined that it was in S.W.'s best interests to award primary custody to Father. Mother appealed. She raises the following issues for our review:

1. Whether the trial court abused its discretion in granting Father primary custody of the parties' minor child and relocating the child from Oklahoma to Pennsylvania, which decision was against the weight of the evidence presented at trial, is contrary to the best interests of the child, and a misapplication of the law?

   a) Whether the trial court abused its discretion and erred in determining that Father was more likely than Mother to encourage and permit the child to have frequent and continuing contact with the other party pursuant to 23 Pa.C.S. § 5328(a)(1)?

   b) Whether the trial court abused its discretion and erred in determining that both parties performed parental duties and assisted with homework, finding that 23 Pa.C.S. § 5328(a)(3) is neutral?

   c) Whether the trial court abused its discretion and erred in determining that Father can provide more stability and continuity for the child simply because he has lived in his same residence for eight years pursuant to 23 Pa.C.S. § 5328(a)(4)?

   d) Whether the trial court abused its discretion and erred in determining the availability of extended family and Father's close proximity to Mother's

extended family heavily favors Father in light of Mother's many travels to the area to visit her family, pursuant to 23 Pa.C.S. § 5328(a)(5)?

e) Whether the trial court committed error in determining the child's sibling relationships pursuant to 23 Pa.C.S. § 5328(a)(6) favored Father?

f) Whether the trial court abused its discretion and erred in determining that Father is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs due to him residing in his home for eight (8) years pursuant to 23 Pa.C.S. § 5328(a)(9)?

g) Whether the trial court abused its discretion and erred in determining that the parties were equally likely to attend to the daily physical, emotional, developmental, educational and special needs of the child pursuant to 23 Pa.C.S. § 5328(a)(10)?

h) Whether the trial court abused its discretion and erred in determining this factor favored Father because Father's child care arrangement "support system is more sufficient" even though Mother is a stay at home mom and needs no "support system," pursuant to 23 Pa.C.S. § 5328(a)(12)?

i) Whether the trial court abused its discretion and committed error in finding that the level of conflict between the parties and willingness and ability of the parties to cooperate with one another favored Father because Mother demonstrated more hostility in text messages and Father testified that information was not shared in a timely manner pursuant to 23 Pa.C.S. § 5328(a)(13)?

j) Whether the trial court abused its discretion and erred in its consideration of thirteen (13) days of missed school, voicemails left by Mother's significant other on Father's cell phone, pursuant to 23 Pa.C.S. § 5328(a)(16), and failed to indicate how these issues affected the court's decision?

k) Whether the trial court erred in its application of 23 Pa.C.S. §§ 5337(h)(2), (3) and (7), and its

determination that the child's relocation will enhance the child's general quality of life, pursuant to 23 Pa.C.S. § 5328 (a)(16)?

Initially, we note our scope and standard of review:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.

*Johns v. Cioci*, 865 A.2d 931, 936 (Pa. Super. 2004) (citations and quotation omitted). Further, this Court has stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (en banc), we stated the following regarding the abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also

- 4 -

made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted). Finally, this Court must accept the trial court's findings that are supported by competent evidence of record, "as our role does not include making independent factual determinations." **C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012). Moreover, "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *Id.*

In reaching its determination, the court analyzed the factors set forth at 23 Pa.C.S.A. § 5328(a) of the Child Custody Act ("the Act"). **C.R.F.**, *supra*. Judge Adams set forth each of the sixteen factors and provided an analysis relevant to that factor based on the facts and evidence specific to this case. **See** Trial Court Opinion, 1/15/15, at 2-9. Although the court found the majority of the custody factors were neutral, it concluded that several favored Father. In particular, the court found that the need for stability and continuity in S.W.'s education, family life and community life favored Father. **See** 23 Pa.C.S.A. § 5328(a)(1)(4). Due to the nature of Mother's husband's employment as a project manager for an oil pipeline construction company, Mother and her husband frequently relocate for temporary periods. Father, on the other hand, has resided with his wife, daughter and stepdaughter in the same location for eight years. The court placed considerable weight on this factor, and emphasized that S.W. was

starting primary school, a time when children begin to form long-term relationships. In addition, Father, his extended family, and Mother's parents and her extended family all reside in Pennsylvania. For this reason, the court found the availability of extended family favored Father. *See* 23 Pa.C.S.A. § 5328(a)(5). The court also found that due to Father's difficulty in contacting S.W. during Mother's custodial periods, Father would be more likely to encourage and permit continuing and frequent contact with Mother. The court, therefore, weighed this factor in Father's favor. *See* 23 Pa.C.S.A. § 5328(a)(1). The child's sibling relationships also favored Father, as S.W.'s stepsister, age 5, and half-sibling, age 2, are close to her age and she spends time with both of them when in Father's custody. *See* 23 Pa.C.S.A. § 5328(a)(6).[2]

We find no abuse of discretion. *Johns*, *supra*. The trial court did precisely what was required of it; it weighed the section 5328(a) factors in making the custody determination and explained its considerations "in a manner that informed the parties of the reasons for the custody award." *See M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013). The court's review of the custody factors, and its related conclusions, support its decision that primary physical custody with Father was in S.W.'s best

---

[2] The court emphasized that both Mother and Father clearly love and want what is best for S.W., however, the level of hostility between them is palpable.

interest. Mother is asking us to reject the trial court's findings and credibility determinations in favor of the factual findings and credibility determinations she proposes. This we cannot do. **Ketterer**, **supra**.

We affirm the custody order based on Judge Adams' opinion and we direct the parties to attach a copy of the trial court's opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/11/2015

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## FAMILY DIVISION

| | | |
|---|---|---|
| SHAWN WASSILEWSKI, | : | NO: 2009-FC-001342-03 |
| Plaintiff | : | |
| | : | |
| vs. | : | Civil Action - Law |
| | : | |
| STEPHANIE ICKES, n/k/a | : | |
| STEPHANIE FITZGERALD, | : | |
| Defendant | : | Action in Custody |

APPEARANCES:
    For Plaintiff:      John J. Mooney, III, Esq.
    For Defendant:    Charles J. Hobbs, Esq.

## OPINION

This matter is before the Court on Plaintiff/Father's Petition for Modification filed on July 28, 2014. Mother and Father have one child together: Skyla Wassilewski (YOB 2007). Father seeks primary physical custody of the child during the school year. Mother seeks to continue the current arrangement under which she has primary physical custody in Oklahoma with Father sharing physical custody during school breaks.

A Conciliation Conference was held on September 15, 2014. An Interim Order for Custody, Pending Trial, was entered on September 17, 2014, providing for continuation of the previous Order for shared legal custody and primary physical custody to Mother. A Pretrial Conference was held on November 3, 2014, and a trial was held on January 13, 2015.

1

At trial, Mother presented the testimony of Curtis Fitzgerald (her husband), and herself. Father presented the testimony of Jessica Wassilewski (his wife), and himself. The Court also met with Skyla in camera. After careful review of the testimony and exhibits, this Opinion follows.

Pursuant to 23 Pa.C.S.A. §5328, the Court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

2

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

With the aforementioned principles in mind, we now address the best interest factors outlined at 23 Pa.C.S.A. §5328. We begin with which party is more likely to encourage and permit frequent and continuing contact between the child and the other party. Both parties testified as to their desire to involve the other parent in the child's life. However, Father testified as to difficulty in contacting Skyla when in Mother's care, and Father has a demonstrated history of allowing Mother's family to see Skyla during his brief custodial periods. The Court concludes that this factor favors Father.

The second consideration is present or past abuse committed by either party or a member of a party's household and whether there is a continued risk of harm to the child. All testimony reflected that there have been no concerns of potential abuse of the child. The Court finds that this factor favors neither party.

Next, the Court must consider the parental duties performed by each party on behalf of the child. Both parties perform basic parental duties for the child during their custodial time, and both parties stressed a focus on education and helping Skyla with homework. The Court finds that this factor is neutral, as well.

The next factor for consideration is the need for stability and continuity in the child's education, family life, and community life. Mother's living and working arrangements are constantly in transition due in part to her husband's work requirements. Skyla changed schools once this year, and Mother's own testimony suggested that she was recently considering taking a temporary job in another state which would have

4

resulted in Skyla changing schools again. Father has resided at the same address for over eight years. The Court thus finds that this factor significantly favors Father.

The Court must next consider the availability of extended family. Mother currently resides in Calvin, Oklahoma, with Skyla. Mother has no extended family living near her. Father currently resides in Thomasville, Pennsylvania, within 15 miles of his mother, grandfather, and two brothers, as well as in close proximity to Mother's extended family. All of the extended family members of both parties are involved in the child's life. This factor heavily favors Father.

The next consideration is the child's sibling relationships. Skyla has three older step-siblings from Curtis's family, but they are significantly older and do not have a lot of contact with Skyla. Skyla has a half-sibling, Teagan (2), and a step-sister, Jade (5), at Father's house, who she spends time with whenever she is in Father's custody. This factor therefore favors Father.

The next factor to consider is the well-reasoned preference of the child, based on the child's maturity and judgment. The child expressed a desire to see both parents. Given the child's age, this factor does not carry significant weight in this case.

The next factor to be considered is any attempts of a parent to turn the child against the other parent, except in cases of domestic violence. Both parties have made derogatory remarks toward one another and directed at one another to third parties. However, there is no testimony to suggest attempts to turn the child against another parent. This factor is neutral.

5

Next, the Court must consider which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. Both parents clearly love and want the best for the child. However, as discussed above, Father presents a much more stable living arrangement for Skyla. The Court thus finds that this factor favors Father.

The next consideration is which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. Both parties properly care for the child during their custodial time. Mother's husband is a former educator and has knowledge of educational and developmental resources that can aid Skyla. Father's wife is a stay-at-home mom, and as such can spend a significant amount of time helping raise Skyla. As such, this factor favors neither party.

Next, the Court must consider the proximity of the residences of the parties. As Mother currently lives in Oklahoma and neither party has any foreseeable prospect for moving within a distance in which this factor will play a role in custodial exchanges, this factor is neutral. A shared arrangement is not possible with this distance between the parties.

The next enumerated factor is each party's availability to care for the child or ability to make appropriate child-care arrangements. Mother testified that she works only when Skyla is in school. On the occasions that she does need assistance, she testified that she has neighbors who watch Skyla for a short time. Father's wife does not currently work out of the house, so she is available for child care. Father also lives close to the

6

extended families of both parties. Overall, Father's support system is more sufficient, so the Court finds that this factor slightly favors Father.

The Court must next consider the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. The parties communicate mostly by text message and e-mail, but also by phone. Both parties admit to difficulty in dealing with one another, although Father's exhibits show noticeably more hostility from Mother via e-mail and text. *See* Pl.'s Exs. 3, 7. Father also testified that Mother has not shared with him all of the necessary information under a shared legal custody arrangement in a timely fashion. Thus, the Court finds that this factor favors Father and that a shared arrangement between the parties would be difficult.

The Court must also address any history of drug or alcohol abuse by a party or a member of a party's household. Because neither party testified as to concern about drug or alcohol use by the other party, the Court finds that this factor is neutral.

The Court must also consider the mental and physical condition of a party or member of a party's household. Because there is no history of mental or physical obstacles to child care in either household, this factor is also neutral.

The Court must finally consider any other relevant factor to custody. Father expressed concern with Skyla missing 13 days of school last year, although he admits that three of the missed days were a result of his exercising custody at the beginning of the school year before Skyla could return to Oklahoma. Also, the Court notes the lack of cooperation between both the parties and their significant others since entry of the

7

previous Order, particularly threatening voicemails left by Mother's husband on Father's cell phone. *See* Pl.'s Ex. 5.

Another relevant factor is that a change in primary physical custody may involve a move of significant distance for Skyla. While the move of a child does not *per se* trigger the Relocation section of the Child Custody Act (23 Pa. C.S.A. § 5337), Pennsylvania courts have held that certain relocation factors are relevant to determining the child's best interests when the child may move a great distance. In particular:

> ...[I]n any custody determination where neither parent is moving, but the children stand to move to a significantly distant location, the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2)), the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)).

*D.K. v. S.P.K.*, 102 A.3d 467 (Pa. Super. 2014). Skyla has just recently entered elementary school, and she is approaching an age where children typically begin to form meaningful relationships with peers. The stability in school and extended family relationships provided by Father are likely to enhance Skyla's educational and emotional development. Additionally, as stated previously, Father has proven to be open to preserving a relationship between Skyla and Mother. Overall, this Court finds that a change in residence will enhance Skyla's general quality of life.

Given the foregoing, the Court finds that it is in the child's best interest for the parties to continue to share legal custody but Father to be granted primary physical

8

custody. Of particular importance to this decision is the greater stability that Father can offer in Skyla's home life, as well as the relationships she can have with her siblings and extended family members in Pennsylvania. An Order will be entered in conformance with this Opinion.

With respect to Mother's Petition for Contempt, the Court finds that Father did not violate the prior Order by refusing to release Skyla to Maternal Grandmother in July 2014. Regarding summer months, the prior Order stated: "[I]f Mother comes to Pennsylvania, she will be afforded one week with the child...Mother will give Father 30 days' advance written notice of her intention to exercise her one week of custody in the summer." Father offered to release Skyla to Mother as soon as she arrived in Pennsylvania, in conformance with the Order, but Mother chose not to come to Pennsylvania within the time frame allotted by her prior notice. *See* Pl.'s Ex. 7. Therefore, the Court will not hold Father in contempt nor grant Mother an extra week of custody.

By the Court,

Joseph C. Adams, Judge

DATED: January 15, 2015

9